IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JAMES EDWARD MARTINEZ,     §
    §
       Petitioner,     §
    §
VS.     §   NO. 4:04-CV-728-A
    §
DOUGLAS DRETKE, DIRECTOR, TEXAS §
DEPARTMENT OF CRIMINAL JUSTICE, §
CORRECTIONAL INSTITUTIONS     §
DIVISION,     §
    §
       Respondent.     §

MEMORANDUM OPINION
and
ORDER

Came on for consideration the application for writ of habeas corpus ("application") filed by James Edward Martinez ("Martinez"), an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division, who is under sentence of death. The court has determined that the application should be denied for the reasons set forth in this memorandum opinion and order.

I.

Procedural History

On December 20, 2000, an indictment was filed against Martinez in Tarrant County, Texas, for the September 21, 2000, murders of Sandra Walton ("Walton") and Michael Humphreys ("Humphreys"). The one-count indictment charged Martinez with the offense of shooting both victims with a firearm during the same criminal transaction. On January 22, 2002, trial on the merits began. On January 30, 2002, the jury returned its verdict

of guilty.   The trial proceeded to the punishment phase and on February 1, 2002, the jury returned its verdict mandating a sentence of death under Texas law.   By judgment signed February 6, 2002, the state trial court ordered that Martinez's punishment be death.   Martinez appealed and on November 5, 2003, the Court of Criminal Appeals of Texas affirmed his conviction and sentence.   Martinez v. State, No. 74,292, 2003 WL 22508081 (Tex. Crim. App. Nov. 5, 2003).   His petition for writ of certiorari was denied.   Martinez v. Texas, 125 S. Ct. 32 (2004).

On October 22, 2003, Martinez filed his state application for writ of habeas corpus raising eleven grounds for relief.   On December 9, 2003, Martinez filed a motion to supplement his writ with additional claims.   On June 2, 2004, the trial court adopted the State's proposed findings of fact and conclusions of law.   On September 22, 2004, the Court of Criminal Appeals of Texas denied the application.   Ex parte Martinez, No. 59,313-01 (Tex. Crim. App. Sept. 22, 2004).   The motion for leave to add claims was treated as a subsequent application and dismissed.   Ex parte Martinez, No. 59,313-02 (Tex. Crim. App. Sept. 22, 2004).   The order stated, in pertinent part:

> This Court has reviewed the record with respect to the eleven allegations made by Applicant in his initial application.  We adopt the trial judge's findings and conclusions.  Based upon the trial court's findings and conclusions and our own review, the relief sought is denied.

> With respect to Applicant's two subsequently filed allegations, we conclude that Applicant has failed to show the factual or legal bases of his claims were unavailable to him at the time he filed his initial application.  Therefore, those claims are dismissed

2

pursuant to Code of Criminal Procedure Article 11.071
§ 5.  *Ex parte Graves*, 70 S.W.3d 103 (Tex. Crim. App.
2002).

Ex parte Martinez, Nos. 59,313-01 & 59,313-02, slip op. at 2
(Tex. Crim. App. Sept. 22, 2004).  Martinez's related petition
for writ of certiorari was denied.  Martinez v. Texas, 125 S. Ct.
1401 (2005).

On October 6, 2004, Martinez filed a motion for leave to
proceed in forma pauperis and a motion for appointment of counsel
to represent him in the filing of a petition for writ of habeas
corpus under 28 U.S.C. § 2254, which were assigned the above-
referenced civil action number.  During a telephone
conference/hearing on October 7, 2004, the court told Martinez
that he would need to file an affidavit to support his motion for
leave to proceed in forma pauperis and that both of his motions
would be held in abeyance pending the filing of the supporting
evidence.  On November 29, 2004, Martinez filed his declaration
in support of the motion for leave to proceed in forma pauperis,
indicating his wish to proceed with the filing of a petition in
this action.  Consistent with the discussion with petitioner and
counsel during the October 7 telephone conference/hearing, the
court granted the motion for leave to proceed in forma pauperis
and appointed counsel to represent Martinez in the preparation
and filing in this court of an application for writ of habeas
corpus presenting only grounds for relief that had been exhausted
in the state court.  On January 10, 2005, petitioner filed his
application and, on January 14, 2005, a supplemental memorandum

in support thereof.[1]  After receiving several extensions of time
in which to answer, on May 31, 2005, respondent, Douglas Dretke,
Director, Texas Department of Criminal Justice, Correctional
Institutions Division, filed his response.

## II.

### Underlying Facts

Martinez briefly dated Walton, and gave or loaned her money
from time to time.  In May of 2000, Walton signed a promissory
note reflecting that she owed Martinez $1,000.  Martinez became
fixated on obtaining repayment from her, stalking, harassing, and
threatening Walton on numerous occasions.  On the night of her
murder, Martinez pounded on Walton's door, threatening to break
it down if she did not open the door.  He had earlier told Walton
that her time was almost up.  Walton and Humphreys, who was
visiting, went out to get something to eat.  When they returned,
at approximately 1:00 a.m. on September 21, 2000, they were shot
to death with a high-powered rifle.  Witnesses saw a man dressed
in black trotting away from the scene.  Police found twenty-seven
shell casings at the scene.  Walton was shot nine or ten times;
Humphreys, eight.

On the night of the murders, Martinez called Casey Ashford
("Ashford"), a long-time friend, several times.  Martinez drove
to the farm where Ashford was staying to deliver a black canvas
bag for Ashford to keep.  Ashford looked in the bag and saw the

---

[1]The application is subject to being stricken as it presents, in
violation of the court's orders, grounds that have not been
exhausted.

rifle later determined to be the murder weapon, among other items.  He buried the bag, but later disclosed its location to police.  When police opened the bag, they found the rifle, a bag of fertilizer, a fuse, dark clothing, combat boots, gloves, a pipe bomb, a ski mask, a double-edged knife, a bulletproof vest, and ammunition.

At trial, Martinez tried to pin the blame for the murders on Ashford.  His mother and brother testified that he had been at home on the night of the murders.  He also showed that Ashford lied several times when dealing with the police and that, prior to the murders, Ashford had had access to the murder weapon.

At the punishment phase of the trial, the State introduced items that had been kept by Martinez in a storage facility.  They included bomb-making components, over 3000 rounds of ammunition, other weapons, including two pistols, several illegal knives, illegally modified shotguns, and several rifles.  Also introduced were four books bearing the notation "completed reading by James Martinez": <u>Be Your Own Undertaker: How to Dispose of a Dead Body</u>; <u>Master's Death Touch: Unarmed Killing Techniques</u>; <u>21 Techniques of Silent Killing</u>; and <u>Dragon's Touch: Weaknesses of the Human Anatomy</u>.  The State also offered victim-impact testimony by Humphreys' father, mother, and stepmother, and Walton's mother.

Martinez called a number of people to testify that they had not known him to be a violent person and did not believe he would commit any more crimes in the future.  None of them seemed to know Martinez very well, except his mother and brother, and most

of them did not know (or admit that they knew) about his extensive collection of weapons and the books Martinez had read. Martinez also presented testimony of a former custodian of records for the Texas Department of Criminal Justice, who testified generally about daily prison routines and classification of prisoners.  Martinez also presented the testimony of Dr. Mark Cunningham ("Cunningham"), a clinical and forensic psychologist who testified about recidivism rates for capital murderers with Martinez's characteristics.  Cunningham testified that there was only a small chance that a person like Martinez would commit future acts of violence in prison.  In rebuttal, the state offered the testimony of an investigator with the prison prosecution unit, who testified about violence within the prison population.

III.

Scope of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA").  Under AEDPA, the ability of federal courts to grant habeas relief to state prisoners is narrowly circumscribed:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

6

law, as determined by the Supreme Court of
the United States; or

(2)   resulted in a decision that was
based on an unreasonable determination of the
facts in light of the evidence presented in
the State court proceeding.

AEDPA, § 104(3) (codified at 28 U.S.C. § 2254(d)).  AEDPA further

provides:

(e)(1)  In a proceeding instituted by an
application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court
shall be presumed to be correct.  The applicant shall
have the burden of rebutting the presumption of
correctness by clear and convincing evidence.

AEDPA § 104(4) (codified at 28 U.S.C. § 2254(e)(1)).

Having reviewed the application, the response, the record,

and applicable authorities, the court finds that none of

Martinez's grounds has merit.

IV.

Grounds for Relief

Martinez urges twenty-nine grounds in support of his

application.  Some of them have sub-parts.  Some are duplicates.

Grounds ten through twenty were not exhausted in the state court.

Because the grounds are so voluminous, the court does not set

them all forth here.

V.

Unexhausted Claims

Before a ground may be raised in a federal habeas

application, the petitioner must have fairly presented the same

ground to the state courts.  Picard v. Connor, 404 U.S. 270, 275

7

(1971).  That is, the state court system must have been presented
with the same facts and the same legal theory.  <u>Id.</u> at 275-76.
Mere similarity of claims is insufficient to meet the exhaustion
requirement.  <u>Duncan v. Henry</u>, 513 U.S. 364, 366 (1995); <u>Wilder
v. Cockrell</u>, 274 F.3d 255, 260-61 (5th Cir. 2001).

Where it is clear that a petitioner would be barred from
going back to state court to present an unexhausted claim for
consideration, that claim is subject to denial in federal court
as procedurally defaulted.  <u>Gray v. Netherland</u>, 518 U.S. 152,
161-62 (1996); <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991).
Such is the case here with regard to grounds ten through twenty.
Texas regularly applies the abuse of the writ rule, <u>see</u> Tex. Code
Crim. Proc. 11.071, § 5(a) (Vernon 2005).  <u>Fuller v. Johnson</u>, 158
F.3d 903, 906 (5th Cir. 1998).  Thus, Martinez may proceed with
those grounds only if he can show cause and prejudice for the
default, or that failure to consider the grounds will result in a
fundamental miscarriage of justice.  <u>Coleman</u>, 501 U.S. at 750;
<u>Muniz v. Johnson</u>, 132 F.3d 214, 220-21 (5th Cir. 1998).  He has
made no attempt to do so and it does not appear that he could.

VI.

<u>Ineffective Assistance of Counsel</u>

In his first five grounds, Martinez alleges that he received

8

ineffective assistance of counsel.[2]  The grounds are:

CLAIM ONE

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF
COUNSEL BY FAILING TO INFORM THE PETITIONER OF THE
STATUTORY APPLICATION OF ACCOMPLICE WITNESS TESTIMONY
TO HIS CASE.

CLAIM TWO

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF
COUNSEL DURING VOIR DIRE BY FAILING TO VOIR DIRE ON THE
LEGAL THEORY OF AN ACCOMPLICE WITNESS AS A MATTER OF
LAW.

CLAIM TWO-A

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF
COUNSEL DURING VOIR DIRE BY FAILING TO VOIR DIRE ON THE
LEGAL THEORY OF AN ACCOMPLICE WITNESS AS A MATTER OF
FACT.

CLAIM THREE

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF
COUNSEL BY FAILING TO REQUEST A CHARGE ON THE QUESTION
OF ACCOMPLICE WITNESS TESTIMONY AS A MATTER OF LAW.

CLAIM THREE-A

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF
COUNSEL BY FAILING TO REQUEST A CHARGE ON THE QUESTION
OF ACCOMPLICE WITNESS TESTIMONY AS A MATTER OF FACT.

CLAIM FOUR

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF
COUNSEL BY PRESENTING TESTIMONY THAT DELEGITIMIZED A
CAPITAL LIFE SENTENCE AS A VIABLE SENTENCING OPTION.

---

[2]Martinez twice lists a "CLAIM SIX" worded as follows: "TRIAL
COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY PRESENTING
MITIGATION TESTIMONY THAT VIRTUALLY GUARANTEED THE EXECUTION OF THE
PETITIONER."  Application at 7 & 20.  Such a ground was not raised in
the state court proceedings and cannot be pursued here.  See Coleman
v. Thompson, 501 U.S. 722, 750 (1991); Muniz v. Johnson, 132 F.3d
214, 221 (5th Cir. 1998).  Relief could not be granted on this ground
in any event, as there is no discussion of its merits.

CLAIM FIVE

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF
COUNSEL BY PRESENTING PUNISHMENT TESTIMONY THAT
ESTABLISHED THE PETITIONER WAS A CONTINUING THREAT TO
SOCIETY BEYOND A REASONABLE DOUBT.

In order to prevail on an ineffective assistance of counsel
ground, Martinez must show (1) that his counsels' performance
fell below an objective standard of reasonableness and (2) that
there is a reasonable probability that, but for his counsels'
unprofessional errors, the result of the proceedings would have
been different. Strickland v. Washington, 466 U.S. 668, 687
(1984). Both prongs of the Strickland test must be met to
demonstrate ineffective assistance. Id. at 697. Judicial
scrutiny of this type of claim must be highly deferential and
Martinez must overcome a strong presumption that his counsels'
conduct falls within the wide range of reasonable professional
assistance. Id. at 689.

The trial court made extensive findings of fact and
conclusions of law adopted by the Court of Criminal Appeals in
the habeas proceedings. Habeas R. at 216-21. Martinez has not
made any attempt to show that the findings are not entitled to
the presumption of correctness. 28 U.S.C. § 2254(e)(1). The
record supports the conclusion that Martinez's counsel employed
sound trial strategy. A conscious and informed decision on trial
tactics cannot be a basis for constitutionally ineffective
assistance of counsel unless it is so ill-chosen that it
permeates the entire trial with obvious unfairness. Crane v.

10

Johnson, 178 F.3d 309, 314 (5th Cir. 1999).  The strategy

employed was sound and Martinez has no reason to complain.

VII.

The Mitigation Special Issue

In a number of issues, Martinez attacks the burden of proof

as to the mitigation special issue.  His "CLAIM SIX" is:

> THE TEXAS DEATH PENALTY SENTENCING SCHEME IS
> UNCONSTITUTIONAL AS APPLIED TO THE PETITIONER BECAUSE
> IT FAILED TO REQUIRE THAT THE JURY WAS CHARGED ON THE
> MITIGATION ISSUE WITH THE BEYOND A REASONABLE DOUBT
> BURDEN OF PROOF.

His "CLAIM SIXTEEN"[3] is:

> WHETHER THE PETITIONER WAS DENIED DUE PROCESS OF LAW
> UNDER THE 5TH AND 14TH AMENDMENTS OF THE U.S.
> CONSTITUTION IN THAT THE COURT FAILED TO REQUIRE THAT
> THE STATE PROVE BEYOND A REASONABLE DOUBT THAT THE JURY
> SHOULD ANSWER SPECIAL ISSUE NUMBER TWO, THE MITIGATION
> SPECIAL ISSUE, SO AS TO BE ENTITLED TO A DEATH SENTENCE
> AND INSTEAD INFORMED THE JURY THAT THERE WAS NO BURDEN
> OF PROOF AT ALL AS TO THAT ISSUE?

"CLAIM SEVENTEEN" is:

> WHETHER THE TEXAS DEATH PENALTY IS UNCONSTITUTIONAL IN
> THAT THE STATE IS NOT REQUIRED TO PROVE BEYOND A
> REASONABLE DOUBT THAT THE JURY SHOULD ANSWER THE
> MITIGATION SPECIAL ISSUE "NO", SO AS TO PERMIT A DEATH
> PENALTY TO BE IMPOSED?

"CLAIM EIGHTEEN" is:

> WHETHER THE PETITIONER WAS DENIED HIS RIGHT TO A JURY
> TRIAL UNDER THE 6TH AND 14TH AMENDMENTS OF THE U.S.
> CONSTITUTION IN THAT THE COURT FAILED TO REQUIRE THAT
> THE STATE PROVE BEYOND A REASONABLE DOUBT THAT THE JURY
> SHOULD ANSWER SPECIAL ISSUE NUMBER TWO, THE MITIGATION
> SPECIAL ISSUE, SO AS TO BE ENTITLED TO A DEATH SENTENCE
> AND INSTEAD INFORMED THE JURY THAT THERE WAS NO BURDEN
> OF PROOF AT ALL AS TO THAT ISSUE?

---

[3]As previously noted, Martinez failed to exhaust his state
remedies as to grounds sixteen through eighteen.  Relief on those
grounds is barred, but would not be available in any event.

And, "CLAIM TWENTY-TWO"[4] is:

> WHETHER THE STATE COURT'S [sic] ERRED IN OVERRULING THE
> PETITIONER'S MOTION TO DECLARE THE TEXAS DEATH PENALTY
> SCHEME UNCONSTITUTIONAL FOR FAILURE TO ALLOCATE THE
> BURDEN OF PROOF ON THE MITIGATION SPECIAL ISSUE TO THE
> STATE IN VIOLATION OF THE 8TH AND 14TH AMENDMENTS OF
> THE UNITED STATES CONSTITUTION?

The argument in support of these grounds is fatuous.  The part of Walton v. Arizona[5] holding that the burden of proof may lie on a defendant to establish by a preponderance of the evidence the existence of mitigating circumstances sufficiently substantial to call for leniency was not overruled by Ring v. Arizona, 536 U.S. 584 (2002).  Neither Apprendi v. New Jersey, 530 U.S. 466 (2000), nor Ring require a mitigating factor to be proven beyond a reasonable doubt.  The issue in both cases was whether a more severe punishment could be imposed by a trial judge after a jury found the facts.  United States v. Booker, 125 S. Ct. 738 (2005), merely reaffirms the holding in Apprendi.

Even if Martinez's argument made any sense, and it does not, the relief he seeks would require retroactive application of Apprendi and Ring.  See United States v. Brown, 305 F.3d 304, 310 (5th Cir. 2002) (Apprendi creates a new rule of criminal

---

[4]CLAIM TWENTY-TWO was raised as Martinez's second point of error on appeal and summarily rejected by the Court of Criminal Appeals. Martinez v. State, 2003 WL 22508081 at *1 (Tex. Crim. App. 2003). Martinez has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).

[5]Walton v. Arizona, 497 U.S. 639, 649-51 (1990).

procedure that is not retroactively applicable).  Thus, the

claims are barred by <u>Teague v. Lane</u>, 489 U.S. 288 (1989).

VIII.

<u>Constitutionality of the Death Penalty Scheme</u>

In his "CLAIM SEVEN,"[6] Martinez urges:

> THE DEATH PENALTY SCHEME IN TEXAS IS UNCONSTITUTIONAL
> UNDER THE EIGHTH AMENDMENT OF THE UNITED STATES
> CONSTITUTION AND THE DUE PROCESS CLAUSE OF THE FIFTH
> AMENDMENT OF THE UNITED STATES CONSTITUTION BECAUSE IT
> LEADS THE STATE TO EXECUTE AN UNACCEPTABLE NUMBER OF
> INNOCENT DEFENDANTS.
>
> UNDER THE CRUEL AND UNUSUAL PUNISHMENTS CLAUSE OF THE
> EIGHTH AMENDMENT AND THE DUE PROCESS CLAUSE OF THE
> FIFTH AMENDMENT, THE CONSTITUTIONALITY OF THE DEATH
> PENALTY MUST BE DETERMINED AND REDETERMINED BY THE
> COURTS IN KEEPING WITH EVOLVING STANDARDS OF DECENCY
> AND CURRENT KNOWLEDGE ABOUT ITS OPERATION.[7]

Martinez does not cite any pertinent authority to support

this ground.  He relies on <u>United States v. Quinones</u>, 205 F.

Supp. 2d 256 (S.D.N.Y.), which was reversed on appeal.  <u>United</u>

<u>States v. Quinones</u>, 313 F.3d 49 (2d Cir. 2002).  On direct

appeal, the Court of Criminal Appeals of Texas determined that it

would not, in any event, "declare the Texas death penalty scheme

unconstitutional based on [Martinez's] prediction as to how the

United States Supreme Court will dispose of a particular federal

death penalty case."  <u>Martinez v. State</u>, 2003 WL 22508081 at *4

(Tex. Crim. App. 2003).  Martinez has not shown that the state

---

[6]CLAIM SEVEN was raised as Martinez's sixth point of error on appeal and was rejected by the Court of Criminal Appeals.  <u>Martinez v. State</u>, 2003 WL 22508081 at *4 (Tex. Crim. App. 2003).

[7]The court notes that Martinez's CLAIM SEVEN, discussed at pages 48-50 of his application, is the same as his CLAIM TWENTY-SIX, discussed at pages 164-166 of the application.

court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1). Moreover, relief is barred under <u>Teague</u>.

IX.

<u>Mixed Signals</u>

Martinez's "CLAIM EIGHT" is:

> THE STATUTE UNDER WHICH THE PETITIONER WAS SENTENCED TO DEATH IS UNCONSTITUTIONAL IN VIOLATION OF THE EIGHTH AMENDMENT AS INTERPRETED IN *PENRY V. JOHNSON* BECAUSE THE MITIGATION SPECIAL ISSUE SENDS MIXED SIGNALS TO THE JURY THEREBY RENDERING ANY VERDICT REACHED IN RESPONSE TO THAT SPECIAL ISSUE INTOLERABLY UNRELIABLE.

Martinez's argument is that the mitigation special issue sends "mixed signals" to the jury.  He discusses at length the nullification instruction formerly given in death penalty cases. He does not, however, explain how the jury could have been confused by the instructions in his case.  The Court of Criminal Appeals rejected this ground on direct appeal.  <u>Martinez v. State</u>, 2003 WL 22508081 at *5 (Tex. Crim. App. 2003).  The issue was likewise rejected in the state habeas proceedings.  Habeas R. at 221-22.  Once again, Martinez has not shown that the decision was contrary to, or involved an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d)(1).  As the Supreme Court has noted, the key to a constitutional sentencing scheme is that the jury be able to consider and give effect to a defendant's mitigating evidence in imposing sentence.  <u>Penry v. Johnson</u>, 532 U.S. 782, 797 (2001).  Such was the case here.

14

X.

Unconstitutional Amendment of the
Mitigation Special Issue

CLAIM NINE states:

THE TRIAL COURT JUDICIALLY AMENDED SPECIAL ISSUE NUMBER
TWO BY GRAFTING THE EVIDENTIARY REQUIREMENTS OF SPECIAL
ISSUE ONE ONTO THE MITIGATION ISSUE VIOLATING THE
PETITIONER'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS AS
APPLIED IN THE CONTEXT OF THE PETITIONER'S JURY CHARGE
AND DELIBERATION.

CLAIM NINE-A is:

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF
COUNSEL BY FAILING TO OBJECT TO THE JUDICIAL AMENDMENT
TO THE TEXAS DEATH PENALTY SCHEME ENSURING THAT THE
PETITIONER WOULD NOT RECEIVE BENEFIT OF THE SPECIAL
MITIGATION ISSUE.

As Martinez admits, these issues were raised in the
supplement to his state application for writ of habeas corpus.
The Court of Criminal Appeals dismissed them as an abuse of the
writ.  Martinez makes no attempt to overcome this procedural bar.
Coleman, 501 U.S. at 750.

XI.

The Meaning of "Probability" and
The Burden of Proof

Martinez argues CLAIMS TEN and ELEVEN together.  They are:

WHETHER THE PETITIONER'S CONVICTION IS INVALID AND THE
PETITIONER WAS DENIED DUE PROCESS OF LAW HEREIN BECAUSE
THE CONVICTION IS BASED ON ARTICLE 37.071, SECTION
2(B)(1), V.A.C.C.P., WHICH IS UNCONSTITUTIONAL AND
DIMINISHES THE STATE'S BURDEN OF PROOF FROM BEYOND A
REASONABLE DOUBT TO THAT OF ONLY "PROBABLE" IN
VIOLATION OF U.S. CONST. AMEND. XIV; TEX. CONST. ART.
I, SEC. 19?

WHETHER THE PETITIONER'S CONVICTION IS INVALID AND THE
PETITIONER WAS DENIED DUE PROCESS OF LAW IN VIOLATION
OF U.S. CONST. AMEND. XIV AND TEX. CONST. ART. I, SEC.
19 BECAUSE THE JURY WAS NOT GIVEN A DEFINITION OF WHAT

15

> WAS MEANT BY THE OPERANT TERMS REQUIRED TO BE
> DETERMINED BY THE JURY WITH RESPECT TO THE PENALTY
> PHASE SPECIAL ISSUES SUBMITTED TO THEM?

His CLAIMS NINETEEN and TWENTY address the same issue:

> WHETHER THE PETITIONER WAS DENIED DUE PROCESS OF LAW
> UNDER THE 5TH AND 14TH AMENDMENTS OF THE U.S.
> CONSTITUTION IN THAT THE COURT DID NOT INFORM THE JURY
> TO WHAT DEGREE OR QUANTITY OF "PROBABILITY", AS THAT
> TERM IS USED IN THE FUTURE DANGEROUSNESS SPECIAL ISSUE,
> THE STATE MUST PROVE IT BEYOND A REASONABLE DOUBT SO
> THAT THE JURY COULD VALIDLY IMPOSE THE DEATH PENALTY?

> WHETHER THE TEXAS CAPITAL SENTENCING SCHEME IS
> UNCONSTITUTIONAL BECAUSE THE COURT DOES NOT INFORM THE
> JURY TO WHAT DEGREE OR QUANTITY OF "PROBABILITY", AS
> THAT TERM IS USED IN THE FUTURE DANGEROUSNESS SPECIAL
> ISSUE, THE STATE MUST PROVE IT BEYOND A REASONABLE
> DOUBT SO THAT THE JURY COULD VALIDLY IMPOSE THE DEATH
> PENALTY?

The argument appears to be that the failure to define the term "probability" somehow unconstitutionally diminishes the State's burden to prove the special issue regarding future dangerousness beyond a reasonable doubt. Martinez did not raise these issues on direct appeal or in his state habeas corpus application. Thus, they are unexhausted and procedurally barred. See Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001). In any event, it is well established that the Texas punishment issues are not impermissibly vague as they have a "common-sense core of meaning." Pulley v. Harris, 465 U.S. 37, 50 n.10 (1984); Milton v. Procunier, 744 F.2d 1091, 1095-96 (5th Cir. 1984). Any relief on these grounds would be barred by Teague.

16

XII.

<u>The Twelve/Ten Rule</u>

Martinez's CLAIM TWELVE is:

WHETHER THE TEXAS DEATH PENALTY SCHEME VIOLATED
PETITIONER'S RIGHTS AGAINST CRUEL AND UNUSUAL
PUNISHMENT AND TO DUE PROCESS OF LAW UNDER THE EIGHTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES
CONSTITUTION BY REQUIRING AT LEAST TEN "NO" VOTES FOR
THE JURY TO RETURN A NEGATIVE ANSWER TO THE PUNISHMENT
SPECIAL ISSUES?

Martinez argues that the requirement of ten votes for the jury to negatively answer a special issue violates the prohibition against cruel and unusual punishment and due process.  He also complains that the jury is not informed of the consequences of a single negative vote on the special issues.  As noted earlier, this ground was not raised on direct appeal or in Martinez's state habeas application.  And, even if it had been exhausted, the ground is without merit.  Martinez's reliance on <u>Mills v. Maryland</u>, 486 U.S. 367 (1988), is misplaced.  <u>Miller v. Johnson</u>, 200 F.3d 274, 288-89 (5th Cir. 2000).  In granting relief in <u>Mills</u>, the Supreme Court determined that there was a substantial probability that reasonable jurors well may have thought that they were precluded from considering any mitigating evidence unless all twelve of them agreed on the existence of a particular such circumstance.  486 U.S. at 384.  Such is not the case in Texas, where each juror is free to give weight to the mitigating evidence as he or she chooses.  Moreover, an instruction such as the one Martinez seeks has no bearing on the jury's role in the sentencing process.  <u>Jones v. United States</u>, 527 U.S. 373, 382

17

(1999).  Finally, since the relief Martinez seeks would require imposition of a new rule, it is barred under Teague.  Alexander v. Johnson, 211 F.3d 895, 897 (5th Cir. 2000); Webb v. Collins, 2 F.3d 93, 95-96 (5th Cir. 1993).

XIII.

Review of Mitigating Evidence

Martinez argues his CLAIM THIRTEEN and CLAIM FOURTEEN together:

> WHETHER THE COURT OF CRIMINAL APPEALS OF TEXAS HAS DENIED THE PETITIONER DUE PROCESS OF LAW AS GUARANTEED TO HIM BY THE U.S. CONST. AMEND. XIV AND TEX. CONST. ART. I, SEC. 19 BY REFUSING TO REVIEW UNDER ANY LEGAL STANDARD WHETHER THE MITIGATING EVIDENCE REQUIRES THAT THE DEATH PENALTY BE SET-ASIDE [sic]?

> WHETHER THE COURT OF CRIMINAL APPEALS OF TEXAS HAS DENIED THE PETITIONER DUE PROCESS OF LAW AS GUARANTEED TO HIM BY THE U.S. CONST. AMEND. XIV AND TEX. CONST. ART. I, SEC. 19 BY REFUSING TO DETERMINE ON APPEAL WHETHER THE JURY'S ANSWER TO THE MITIGATION SPECIAL ISSUE IS SUPPORTED BY SUFFICIENT EVIDENCE TO INSURE THAT THE SAME IS NOT MANIFESTLY UNJUST?

Under these grounds, Martinez argues that the Court of Criminal Appeals of Texas was obligated to review the sufficiency of the evidence supporting the jury's answer to the mitigation special issue.  However, the record does not reflect that he ever made such a request.  Thus, the claims are barred.  Martinez has no constitutional right to such a review in any event.  Moore v. Johnson, 225 F.3d 495, 505-07 (5th Cir. 2000); Hughes v. Johnson, 191 F.3d 607, 621 (5th Cir. 1999).  And, the review Martinez seeks would be a new rule of constitutional law.  Hence, relief is barred under Teague.

XIV.

Exercise of the Jury's Discretion

For his CLAIM FIFTEEN, Martinez asks:

WHETHER THE TEXAS DEATH PENALTY SCHEME DENIED
PETITIONER DUE PROCESS OF LAW, AND IMPOSED CRUEL AND
UNUSUAL PUNISHMENT, IN VIOLATION OF THE FIFTH, EIGHTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES
CONSTITUTION BECAUSE OF THE IMPOSSIBILITY OF
SIMULTANEOUSLY RESTRICTING THE JURY'S DISCRETION TO
IMPOSE THE DEATH PENALTY WHILE ALSO ALLOWING THE JURY
UNLIMITED DISCRETION TO CONSIDER ALL EVIDENCE
MILITATING AGAINST IMPOSITION OF THE DEATH PENALTY?

The argument supporting this ground contains a rambling
discussion of the thoughts of Justice Blackmun in his dissenting
opinion from the denial of the petition for writ of certiorari in
Callins v. Collins, 510 U.S. 1141 (1994).  Despite Justice
Blackmun's beliefs, the United States Supreme Court has
repeatedly held that the Texas death penalty scheme passes
constitutional muster.  See, e.g., Johnson, 509 U.S. at 363-64;
Franklin v. Lynaugh, 487 U.S. 164, 182 (1988); Lowenfield v.
Phelps, 484 U.S. 231, 245 (1988).  In any event, Martinez did not
exhaust state court remedies as to this ground.  And, like the
others, relief on this ground is barred by Teague.

XV.

Sufficiency of the Indictment

Martinez's CLAIM TWENTY-ONE is:

WHETHER THE PETITIONER'S INDICTMENT IN THIS CAUSE WAS
FUNDAMENTALLY DEFECTIVE AND HE WAS DENIED DUE PROCESS
OF LAW AND HIS RIGHT TO A JURY TRIAL BECAUSE THE TRIAL
COURT PERMITTED THE JURY TO CONSIDER IMPOSING A DEATH
SENTENCE WHERE THE INDICTMENT DID NOT ALLEGE WHAT WAS
LATER SUBMITTED TO THE TRIAL JURY AS SPECIAL ISSUE
NUMBER ONE?

This ground and the argument supporting it come almost verbatim from Martinez's first point of error on appeal.  In sum, Martinez alleges that the indictment was fundamentally defective, because it did not allege future dangerousness.  The claim was rejected by the Court of Criminal Appeals of Texas.  Martinez v. State, 2003 WL 22508081 at *1 (Tex. Crim. App. 2003).  Martinez has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).

XVI.

Exclusion of Testimony

In CLAIM TWENTY-THREE Martinez asks:

WHETHER THE PETITIONER WAS DENIED HIS RIGHT OF EFFECTIVE CROSS-EXAMINATION BECAUSE THE STATE TRIAL COURT EXCLUDED TESTIMONY THAT A STATE'S WITNESS WHO WAS URGED AS RESPONSIBLE FOR THE MURDER HAD PREVIOUSLY POSSESSED A BOMB UNDER CIRCUMSTANCES IN WHICH EVIDENCE LINKED TO THE MURDERER INCLUDED A PIPE BOMB?

And, in CLAIM TWENTY-FOUR, he asks:

WHETHER THE PETITIONER WAS DENIED HIS RIGHT TO A FAIR TRIAL AND [TO] PRESENT A DEFENSE BECAUSE THE STATE TRIAL COURT EXCLUDED TESTIMONY OF THE EYEWITNESSES' EXCITED UTTERANCES CONCERNING A DESCRIPTION OF THE ASSAILANT INCONSISTENT WITH THE CHARACTERISTICS OF THE PETITIONER?

CLAIM TWENTY-THREE was presented as Martinez's third point of error, and CLAIM TWENTY-FOUR as his fourth point of error on appeal.  Both claims were rejected by the Court of Criminal Appeals.  Martinez v. State, 2003 WL 22508081 at *1-*4 (Tex. Crim. App. 2003).  Martinez has not shown that the state court's

decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).  The court defers to the Court of Criminal Appeals on matters of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Weeks v. Scott, 55 F.3d 1059, 1063 (5th Cir. 1995).

XVII.

Whether a Mistrial Should Have Been Declared

In CLAIM TWENTY-FIVE, Martinez asks:

WHETHER THE PETITIONER WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT REFUSED TO DECLARE A MISTRIAL WHEN A DETECTIVE BLURTED OUT THAT THE PETITIONER HAD TAKEN A POLYGRAPH?

This ground was presented as point of error number five on appeal and was overruled.  Martinez v. State, 2003 WL 22508081 at *4 (Tex. Crim. App. 2003).  Martinez "concedes that it has generally been held that when a witness gives a nonresponsive answer that mentions a polygraph, but which does not reveal the results[,] there is generally no error in failing to grant a mistrial when the trial court sustains the adverse party's objection and instructs the jury to disregard the answer." Application at 161.  Martinez has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).

21

XVIII.

Jury Discretion

CLAIM TWENTY-SEVEN asks:

WHETHER THE PETITIONER'S DEATH SENTENCE IS
UNCONSTITUTIONAL BECAUSE THE STATUTE UNDER WHICH HE WAS
SENTENCED IS VIOLATIVE OF THE CRUEL AND UNUSUAL
PUNISHMENTS PROHIBITION OF THE 8TH AMENDMENT BECAUSE IT
ALLOWS THE JURY TOO MUCH DISCRETION TO DETERMINE WHO
SHOULD LIVE AND WHO SHOULD DIE AND BECAUSE IT LACKS THE
MINIMAL STANDARDS AND GUIDANCE NECESSARY FOR THE JURY
TO AVOID ARBITRARY AND CAPRICIOUS IMPOSITION OF THE
DEATH PENALTY?

CLAIM TWENTY-SEVEN was raised as Martinez's seventh point of

error on appeal and was rejected by the Court of Criminal

Appeals.  Martinez v. State, 2003 WL 22508081 at *4 (Tex. Crim.

App. 2003).  Martinez has not shown that the state court's

decision was contrary to, or involved an unreasonable application

of, clearly established federal law, as determined by the United

States Supreme Court.  28 U.S.C. § 2254(d)(1).  In any event, the

relief sought is barred by Teague.

XIX.

Cumulative Error

Finally, in CLAIM TWENTY-NINE, Martinez asks:

WHETHER THE CUMULATIVE EFFECT OF THE ABOVE-ENUMERATED
CONSTITUTIONAL VIOLATIONS DENIED PETITIONER DUE PROCESS
OF LAW IN VIOLATION OF THE FIFTH AND FOURTEENTH
AMENDMENTS OF THE UNITED STATES CONSTITUTION, EVEN IF
NO SEPARATE INFRACTION BY ITSELF ROSE TO THAT
MAGNITUDE?

Where, as here, no error has been demonstrated, there is

nothing to cumulate.  United States v. $9,041,598.68, 163 F.3d

238, 250 (5th Cir. 1998); Darden v. McNeel, 938 F.2d 605, 609

(5th Cir. 1991).

22

XX.

<u>Order</u>

For the reasons discussed herein,

The court ORDERS that the application be, and is hereby, denied, and be, and is hereby, dismissed.

SIGNED June __8__, 2005.


_____/s/ John McBryde_____
JOHN McBRYDE
United States District Judge